1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                      FOR THE DISTRICT OF ARIZONA

8

9   Robert Anthony Ruiz,                    )    No. CIV 04-0918-PHX-JWS (DKD)
                                            )
10              Petitioner,                 )
                                            )
11  vs.                                     )    **REPORT AND RECOMMENDATION**
                                            )
12  Dora B. Schriro, et al.,                )
                                            )
13              Respondents.                )
                                            )
14  _____)

15  TO THE HONORABLE JOHN W. SEDWICK, UNITED STATES DISTRICT JUDGE:

16          Robert Anthony Ruiz ("Ruiz") filed a petition for writ of habeas corpus, challenging

17  his conviction in Maricopa County Superior Court for second-degree murder and the

18  imposition of an aggravated sentence of 18 years.  He raises eight grounds for habeas relief.

19  He alleges as follows:  (1) there was insufficient evidence to convince the jury of guilt

20  beyond a reasonable doubt; (2) on remand the sentencing judge violated his fundamental due

21  process rights by using the emotional harm to the victim's family to aggravate the sentence;

22  (3) he was coerced into not testifying by his trial counsel, thus denying him his constitutional

23  right to testify; (4) counsel provided ineffective assistance by coercing or misguiding him

24  into not testifying; (5) his right to a speedy trial was violated by the trial court's 25-day delay

25  between empaneling the jury and the commencement of trial testimony; (6) appellate counsel

26  provided ineffective assistance by failing to raise certain issues on appeal; (7) a witness at

27  trial was not competent to testify; and (8) the trial court's refusal to admit into evidence a

28  taped interview of an unavailable witness denied Ruiz his due process rights to a fair trial and

to confront witnesses.  The Court agrees with Respondents that all grounds are either unexhausted, non-cognizable, or without merit, and it recommends that the petition be denied and dismissed with prejudice.

## BACKGROUND

Testimony at trial revealed that Larry Griffin ("Griffin") received a social security check sometime prior to April 12, 1995.  Griffin lived with Dawn Price ("Price"), and her two sons, "Junior" and Walter Bell ("Bell").  Griffin and Price decided that they wanted to use some of the money from the social security check to improve their house.  Ruiz and the victim, Gabriel Porras ("Porras"), were acquaintances of Price's.  Price asked Ruiz to install some window alarms in the house and she asked Porras to work on some cabinets.  At various times during the evening of Porras's murder, he and Ruiz were in Price's home.

Some time between midnight and 1:00 a.m. on April 12, 1997, Porras and Ruiz left Price's house.  Price testified that as she was locking the front door she heard her garbage can rattle and the sound of bottles being knocked over.  Price opened the door and saw that Ruiz had Porras by the neck and was saying "I told you to go on."  During cross examination, Price admitted that she had lied to the police initially when she told them she did not see what happened that night.

Price's 11 year old son Bell also testified at trial.  Following a competency hearing, Bell testified that he heard "men sounds" through his bedroom window.  Upon looking out his window Bell saw one man with a knife stabbing another man.  Bell identified the man doing the stabbing as Ruiz because he recognized the hat Ruiz was wearing, and his long hair and facial hair.  Bell testified that Porras tried to run away but fell down and that Ruiz then continued to stab Porras.  Bell testified that Ruiz then folded his knife and ran to the neighbor's backyard.  On cross examination, Bell admitted that he could not see out of his window very well and he could not see faces.  Porras died as a result of the injuries he suffered.  (Dr. Philip Keen testified that a single-edged knife, probably no longer than 6 inches long, caused Porras's wounds.  Two of the multiple wounds were sufficient alone to

1  cause the death of Porras, as one perforated a major blood vessel, and the other penetrated

2  the abdominal area.)  Based on the information provided by witnesses and others, the police

3  arrested Ruiz.  However, the police were unable to recover any knife or clothing that matched

4  the description given by the eye witnesses.  By the time police arrested Ruiz, he had shaven

5  his head and all of his facial hair.

6      On August 8, 1996,  the jury convicted Ruiz of premeditated murder in the first

7  degree.  On December 13, 1996, the trial court sentenced Ruiz to a life sentence, with parole

8  eligibility after 25 years (Doc. 13, Exh C).[1]

9      Ruiz appealed his conviction for first-degree murder under A.R.S. § 13-1105(A).  He

10 presented the following issues:

11      1.    Was the evidence of Defendant's identity sufficient to sustain
              the  conviction?
12
13      2.    Was the evidence of premeditation sufficient for conviction of
              first-degree murder?
14      3.    Did  the  trial  court  abuse  its  discretion  in  excluding  an
              unavailable witness's pretrial statement?
15
16      4.    Did the trial court commit fundamental error by failing to obtain
              an on-the-record waiver of Defendant's right to testify?
17      5.    Did  the  trial  court  abuse  its  discretion  in  denying  counsel  an
              opportunity to interview jurors after the verdict?
18
19 (*Id.*, Exh D).

20 The Arizona Court of Appeals ruled that the state had failed to prove premeditation beyond

21 a reasonable doubt and reversed the first-degree murder conviction (*Id.* at 5-11).  The court

22 of appeals also ruled that the evidence supported a conviction for second-degree murder, and

23 remanded the case to the trial court for re-sentencing (*Id.* at 11-12).

24

25    _____

26      [1]Jose De La Vara represented Ruiz at trial in 1995, and Hilary Berko represented Ruiz
   during  the  re-sentencing  proceedings  in  1999  (Doc. 13,  Exh C, F).   Christopher Johns
27 represented Ruiz on direct appeal (*Id.*, Exh D).

28                                         - 3 -

On remand from the court of appeals, the trial court sentenced Ruiz to an aggravated term of 18 years (*Id.*, Exh F).  At the re-sentencing hearing, the victim's family members, including his wife, aunt, and brother, addressed the trial court about the emotional impact they suffered as a result of the victim's death (Doc. 48, Exh II at 37-41).  The State argued that the physical and emotional impact on the victim's family should be considered as an aggravating factor (*Id.* at 63).  In sentencing Ruiz to the aggravated 18-year sentence, the trial court considered as aggravating factors his two felony convictions as well as the emotional harm caused to the victim's family (*Id.* at 64).

Ruiz timely appealed his conviction and aggravated sentence for second-degree murder and raised the following claim pertaining to the imposition of an aggravated sentence:

> Can the trial court aggravate a second-degree murder sentence under A.R.S. § 13-702(C)(9) on the grounds of "emotional and financial harm caused to the victim's immediate family" under the holdings of *Payne v. Tennessee* [501 U.S. 808 (1991)] and *State v. Bly* [621 P.2d 279 (Ariz.  1980)], as well as by due process of law?

(*Id.*, Exh HH).

Ruiz argued that the trial court abused its discretion by aggravating his sentence for the following reasons: (1) capital case jurisprudence precludes the use of victim impact evidence to aggravate a sentence; (2) the use of such evidence to aggravate a sentence for a murder conviction constitutes "double counting;" and (3) the trial court's finding of emotional harm to the victim's family was not guided by any standard in violation of his due process rights (*Id.*).  On January 25, 2001, the court of appeals affirmed Ruiz's 18-year sentence (Doc. 13, Exh I, Memorandum Decision).   On February 28, 2001, the Maricopa County Public Defender's Office notified Ruiz that it would not petition for review from the decision of the court of appeals and that it had requested an extension of time to permit Ruiz to file a *pro se* petition for review (*Id.*, Exh J).  Subsequently, the court of appeals extended the time to March 30, 2001, in which Ruiz could file a *pro se* appeal (*Id.*, Exh K).  As of April 12, 2001, the time for filing a motion for reconsideration or petition for review had expired and no

1    motion or petition had been filed.  The court of appeals issued an order and mandate (*Id.*, Exh

2    L, Mandate).

3    On December 22, 1999, during the pendency of direct review, Ruiz filed a *pro se*

4    Notice of Post-Conviction Relief (*Id.*, Exh H, Notice of Post-Conviction Relief).  Appointed

5    counsel Christopher Johns filed a Petition for Post-Conviction Relief, raising the following

6    claims:

7        1.    Ruiz was coerced into not testifying by his trial lawyer (Jose De
    La Vara), consequently denying him his constitutional right to
8                 choose whether or not to testify at trial under both the Arizona
    and United States Constitutions.
9

10       2.    Ruiz' right to a speedy trial was thwarted by the trial court's
    empanelling of a jury and subsequent 25-day interval before
11                commencing trial testimony.

12       3.    Trial counsel's coercion or misdescription [sic] of Ruiz' his right
    to testify supports and [sic] ineffective assistance of counsel
13                claim.

14   (*Id.*, Exh N).

15   On September 14, 2000, the trial court issued a minute entry, ruling as follows:

16       The Court has considered the Petition for Post Conviction Relief with
    its attachments, including Petitioner Ruiz' Affidavit, State's Response,
17   Petitioner's Reply, case files and records.  The Court finds that Petitioner's
    claim of a violation of Rule 8, speedy trial, is precluded under Rule 32.2(3).
18   This matter could have been raised in the direct appeal of this matter.  This
    Court is persuaded that from the Rule 32 pleadings, the State has carried its
19   burden by a preponderance to show a waiver on this issue.

20       With respect to the claim by the Petitioner that his decision not to testify
    was involuntary or coerced by defense counsel and that he was rendered
21   ineffective assistance of counsel as a result of that alleged coercion, this Court
    determines that Petitioner has raised a colorable claim presenting material
22   issues of fact.

23   (*Id.*, Exh O).

24   On October 25, 2000, during the ongoing Post-Conviction proceeding, Ruiz filed a

25   *pro se* petition for review from the dismissal of his allegation of a speedy trial violation in

26   his original Petition for Post-Conviction Relief (*Id.*, Exh P).

27

28

1    The trial court conducted an evidentiary hearing on the issue of ineffective assistance

2    of counsel. On December 22, 2000, following the hearing, the trial court denied the Petition

3    for Post-Conviction Relief, ruling as follows:

4           The Court requested supplemental briefing regarding whether or not
     Defendant's statements to police were introduced at the trial in this matter.
5    The Court has considered Defendant's supplemental Post Conviction Relief
     Petition, it[s] attachments and the State's supplemental pleading.

6           The Court has considered the above as well as the original Petition,
7    State's Response, Petitioner's Reply, testimony and exhibits received at the
     evidentiary hearing, oral argument, applicable Rules, Statutes and case law and
8    the entire file.

9           Defendant maintains he was denied effective assistance of counsel from
     Mr. De La Vara during the trial and that his decision not to testify was
10   involuntarily and coerced by counsel.

11          Based on a consideration of all of the above, the Court finds Defendant
     has failed to proved [sic] by a preponderance his claim of ineffective
12   assistance and his claim of coercion.

13          The Petition for Post Conviction Relief is denied.

14   (*Id.*, Exh R).

15   On April 13, 2001, Ruiz filed a *pro se* petition for review raising the following claims:

16          (1) Did the trial court err in denying Petitioner's claim of violation of, violation Rule
17   8 speedy trial?

18          (2) Were Petitioner's speedy trial rights violated?

19          (3) Could this matter have been raised by defendant on direct appeal?

20          (4) Did the trial court err in denying Petitioner's claim that his decision not to testify
     was involuntary or coerced by defense counsel?

21          (5) Did the trial court err in denying Petitioner's claim of ineffective assistance of
22   counsel?

23          (6) Were Petitioner's right to testify at trial violated?

24   (*Id.*, Exh T).

25          The court of appeals summarily denied review of both petitions (*Id.*, Exh U, 1 CA-CR
26   00-0862PR Order of 1/9/02; Exh V, 1 CA-CR 01-0412PR Order of 2/7/02).

27

28

On March 12, 2002, Ruiz filed a second Notice of Post-Conviction Relief (*Id.*, Exh W).  In the Notice, Ruiz alleged that he was raising a claim pursuant to Rule 32.1(d), (e), (f), (g), or (h), and that the applicable exception to the timeliness requirement was a claim of actual innocence (*Id.*).  When asked to state the facts which supported the claim and the reasons for failing to raise the claim in a timely manner, Ruiz stated:

> Defendant is filing a second petition for post-conviction relief, based on a remand for resentencing by the court of appeals, and is raising ineffective assistance of counsel by Hilary Berko who represented defendant at sentencing on remand, and Christopher V. Johns who represented defendant on direct appeal, after sentencing on remand.

(*Id.*).  On April 5, 2002, the trial court dismissed Ruiz's Notice of Post-Conviction Relief, pursuant to Rule 32.2(b) stating:

> Defendant filed on March 12, 2002 a second Notice of Post-Conviction Relief in this case where the appellate mandate affirming his convictions and sentences on direct appeal was issued on April 13, 2001, and a prior Rule 32 proceeding was dismissed on June 26, 2001.  Defendant claims that he should be excused from the timeliness requirement based upon his actual innocence. The claims he raises, however, are ineffective assistance of his trial and appellate attorneys.  A claim of ineffective assistance of counsel is not a showing of actual innocence that would entitle defendant to raise an untimely claim and to a hearing under Rule 32.1(h).

(*Id.*, Exh X).

On September 11, 2002, Ruiz filed his third Notice of Post-Conviction Relief and Petition for Post-Conviction Relief (*Id.*, Exh Y).  Ruiz argued that his claims involve the denial of rights of sufficient constitutional magnitude to require a personal waiver in order to be found precluded, and that absent a personal waiver the trial court erred in dismissing his post-conviction proceedings without first allowing him to file a Petition for Post-Conviction Relief (*Id.*).  In his ineffective assistance of appellate counsel claim, Ruiz argued that by failing to argue on appeal his speedy trial, confrontation, and due process violations, he was prejudiced.  Ruiz argued that this successive ineffective assistance of counsel claim should not have been precluded as untimely without first determining whether the underlying claims involve the denial of rights of sufficient constitutional magnitude to require personal wavier (citing *Stewart v. Smith*, 46 P.3d 1067 (Ariz.  2002)).  On October 8, 2002, the trial

court ruled that *Stewart* was not a significant change in the law that applied to Ruiz's case, and that Ruiz had not set forth a claim under Rule 32.1(g) (*Id.*, Exh Z). The trial court further ruled as follows:

> Rule 32.4(a) provides that any notice not timely filed may only raise claims pursuant to Rule 32.1(d), (e), (f), (g) or (h). Defendant's claim of ineffective assistance of appellate counsel is a claim under Rule 32.1(a) and therefore does not come within one of these exceptions. Defendant has failed to state a claim that falls within the exceptions to the timeliness requirement.
>
> **IT IS THEREFORE ORDERED** dismissing defendant's third Notice of Post-Conviction Relief, pursuant to Rule 32.2(b).

(*Id.*).

On January 9, 2003, Ruiz filed a Petition for Review in the court of appeals (*Id.*, Exh BB). On March 2, 2004, the court of appeals summarily denied review (*Id.*, Exh CC).

In Ruiz's federal habeas petition, he asserts the following grounds for relief:

(1)   Insufficient evidence existed to firmly convince a jury of guilt beyond a reasonable doubt;

(2)   The sentencing judge's finding on remand of emotional harm, which was used to aggravate the sentence, violates fundamental due process by being a standardless determination based only on the victim's family statements;

(3)   Ruiz was coerced into not testifying by his trial counsel, consequently denying him his constitutional right to choose whether or not to testify;

(4)   Trial counsel's coercion or misdescription [sic] of Ruiz' right to testify at trial;

(5)   Ruiz' right to a speedy trial was violated by the trial court's empanelling of a jury and subsequent 25-day interval before commencing trial testimony;

(6)   Counsel on appeal rendered ineffective assistance when he failed to recognize, and include on appeal, properly preserved pre-trial constitutional issues affecting Ruiz' speedy trial, confrontation, and due process rights;

(7)   Walter Bell's mental condition and age coupled with his lack of medication in the months prior to trial rendered his testimony so unreliable that it was impossible to effectively cross-examine him on what the truth was, what he imagined, and what Dawn Price (his mother) told him to say; and

(8)   The trial court's refusal to admit Maria Smith's taped interview into evidence denied Ruiz' due process, fair trial, and confrontation rights.

(Doc. 1).

Respondents filed an answer arguing the petition was untimely filed (Doc. 12). This Court previously recognized that absent statutory tolling, the habeas petition would be time barred (Doc. 17). However, the Court ruled that Ruiz's successive petitions for post-conviction relief were "properly filed" because the state court considered the merits of each post-conviction relief petition in making its rulings (*Id.*). In making this determination the Magistrate Judge relied on *Jenkins v. Johnson*, 330 F.3d 1146 (9th Cir. 2003). The court in *Jenkins* stated that if a state court examines the merits of a petition before dismissing the petition, the petition is "properly filed" even if it is ultimately found to be untimely. *Id.* at 1150. Since the petitions were considered "properly filed" by the Magistrate Judge, he ruled that statutory tolling applied, and recommended that the Respondents be required to file an answer addressing the merits of the petition (Doc. 17). The District Judge concluded that the post-conviction relief petitions were not "properly filed" as required to toll the limitations period under § 2244(d)(2) because the state court dismissed the proceedings on timeliness grounds (Doc. 19). The District Judge relied on a Supreme Court case issued after the Court had filed the Report and Recommendation. The Supreme Court in *Pace v. DiGuglielmo*, 544 U.S. 408 (2005), held that petitions for post-conviction relief are not properly filed in state court if they are untimely. *Id.* at 413. The District Judge rejected the Report and Recommendation, and dismissed the federal habeas petition as untimely filed (Doc. 18).

On June 21, 2006, the Ninth Circuit granted a certificate of appealability on the issue of whether the district court properly dismissed Ruiz's petition for writ of habeas corpus as time-barred without first considering equitable tolling of the statute of limitations in light of *Bonner v. Carey*, 425 F.3d 1145 (9th Cir. 2005), *amended on other grounds*, 439 F.3d 993 (9th Cir. 2006). (*Ruiz v. Schriro*, 05-16564 Order of June 21, 2006). The Ninth Circuit then ordered the parties to file supplemental briefs to address the effects that *Harris v. Carter*, 515 F.3d 1051 (9th Cir. 2008), might have on the case (*Ruiz v. Schriro*, 05-16564, Order of Dec. 26, 2008). The Ninth Circuit then remanded the matter to this Court after finding that there was no statutory tolling of the 1-year AEDPA limitations period because the post-conviction

1    relief petition was not "properly filed" within the meaning of 28 U.S.C. § 2244(d), but

2    concluded that Ruiz's request for equitable tolling on the basis of detrimental reliance may

3    have merit (*Ruiz v. Schriro*, 05-16564, Memorandum Decision at 6).

4         Both parties filed supplemental memoranda addressing the issue of equitable tolling.

5    Ruiz argued that he was entitled to equitable tolling under the theory of *Harris* (Doc. 42, 43).

6    Specifically, Ruiz argued that he detrimentally relied on the equitable tolling precedent for

7    filing that existed prior to the United State Supreme Court decision in *Pace v. DiGuglielmo*,

8    544 U.S. 408 (2005) (Doc. 42).  Ruiz argued that because he filed his petition for habeas

9    relief one year before the court decided *Pace*, he was entitled to rely on the equitable tolling

10   principles that existed pre-*Pace*, just as the Petitioner in *Harris* (*Id.*). This Court found Ruiz's

11   arguments for equitable tolling persuasive and recommended that Respondents be required

12   to respond to the merits of the habeas petition (Doc. 44).  The district court adopted the

13   Report and Recommendation (Doc. 45).

14                              **EXHAUSTION OF REMEDIES**

15        A state prisoner must exhaust his state remedies before petitioning for a writ of habeas

16   corpus in federal court.  28 U.S.C. § 2254(b)(1) & (c); *Duncan v. Henry*, 513 U.S. 364, 365-

17   66 (1995); *McQueary v. Blodgett*, 924 F.2d 829, 833 (9th Cir. 1991).  To properly exhaust

18   state remedies, a petitioner must fairly present his claims to the state's highest court in a

19   procedurally appropriate manner.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 839-846 (1999).  In

20   Arizona, a petitioner must fairly present his claims to the Arizona Court of Appeals by

21   properly pursuing them through the state's direct appeal process or through appropriate post-

22   conviction relief.  *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999); *Roettgen v.

23   Copeland*, 33 F.3d 36, 38 (9th Cir. 1994).  A claim has been fairly presented if the petitioner

24   has described both the operative facts and the federal legal theory on which the claim is

25   based.  *Bland v. Cal. Dep't of Corrections*, 20 F.3d 1469, 1472-73 (9th Cir.1994), *overruled

26   on other grounds by Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc); *Tamalini*

27

28                                        - 10 -

1    *v. Stewart*, 249 F.3d 895, 898 -99 (9th Cir. 2001).  The exhaustion requirement will not be

2    met where the Petitioner fails to fairly present his claims.  *Roettgen*, 33 F.3d at 38.

3    　　　If a petition contains claims that were never fairly presented in state court, the federal

4    court must determine whether state remedies remain available to the petitioner.  *See Rose v.*

5    *Lundy*, 455 U.S. 509, 519-20 (1982); *Harris v. Reed*, 489 U.S. 255, 268-270 (1989)

6    (O'Connor, J., concurring).  If remedies are available in state court, then the federal court

7    may dismiss the petition without prejudice pending the exhaustion of state remedies.  *Id*.

8    However, if the court finds that the petitioner would have no state remedy were he to return

9    to the state court, then his claims are considered procedurally defaulted. *Teague v. Lane*, 489

10   U.S. 288, 298-99 (1989); *White v. Lewis*, 874 F.2d 599, 602-605 (9th Cir. 1989).  The federal

11   court may decline to consider these claims unless the petitioner can demonstrate that a

12   miscarriage of justice would result, or establish cause for his noncompliance and actual

13   prejudice.  *See Schlup v. Delo*, 513 U.S. 298, 321 (1995); *Coleman v. Thompson*, 501 U.S.

14   722, 750-51 (1991);  *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986); *Wainwright v. Sykes*,

15   433 U.S. 72, 86 (1977); *United States v. Frady*, 456 U.S. 152, 167-68 (1982).

16   　　　Further, a procedural default may occur when a Petitioner raises a claim in state court,

17   but the state court finds the claim to be defaulted on procedural grounds.  *Coleman*, 501 U.S.

18   at 730-31.  In such cases, federal habeas review is precluded if the state court opinion

19   contains a plain statement clearly and expressly relying on a procedural ground "that is both

20   'independent' of the merits of the federal claim and an 'adequate' basis for the court's

21   decision." *See Harris*, 489 U.S. at 260.  A state procedural default ruling is "independent"

22   unless application of the bar depends on an antecedent ruling on the merits of the federal

23   claim.  *See Ake v. Oklahoma*, 470 U.S. 68, 74-75 (1985); *Stewart v. Smith*, 536 U.S. 856

24   (2002).  A state's application of the bar is "adequate" if it is "'strictly or regularly followed.'"

25   *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988) (quoting *Hathorn v. Lovorn*, 457 U.S. 255,

26   262-63 (1982)).  In cases in which a state prisoner has defaulted his federal claims in state

27   court pursuant to an independent and adequate state procedural rule, just as in cases

28

1    involving defaulted claims that were not fairly presented, federal habeas review of the claims

2    is barred unless the prisoner can demonstrate a miscarriage of justice or cause and actual

3    prejudice to excuse the default. *See Coleman*, 501 U.S. at 750-51.

4    ## DISCUSSION

5    **A.    Unexhausted Claims**

6    Respondents first contend that Ruiz did not properly exhaust Ground 1, and that

7    Grounds 5 and 6 are barred from federal review because those grounds are procedurally

8    defaulted.  In Ground 1, Ruiz argued that there was insufficient evidence presented to

9    convince a jury of guilt beyond a reasonable doubt.  Although Ruiz does not present any

10   evidence to support his argument in his habeas petition, he argued in his 1997 Appellate

11   Brief that the identity evidence was insufficient to sustain his conviction, and there was

12   insufficient evidence to prove premeditation for first degree murder.  The Court is only

13   concerned with his claim of insufficient identity evidence because the state court has already

14   agreed with Ruiz's claim regarding insufficient evidence to prove premeditation, as

15   evidenced by the modified judgment for a second-degree murder conviction.

16   Ruiz's claim that there existed insufficient evidence to establish identity was premised

17   entirely on state law.  At no point did Ruiz argue to the state court that the alleged

18   insufficiency of evidence denied him his right to due process or that it violated any

19   constitutional right.  Ruiz never cited any federal authority, or made any mention of due

20   process, the constitution, or any amendment therein.  Therefore, Ruiz has failed to "fairly

21   present" this claim to the state courts. A claim is fairly presented if the petitioner has

22   described both the operative facts and the federal legal theory on which the claim is based.

23   *Bland*, 20 F.3d at 1472-73.  Further, if a petitioner wishes to claim that an evidentiary ruling

24   in a state court trial denied him his due process rights, he must say so in state court and in his

25   federal habeas petition. *Duncan*, 513 U.S. at 366; *see also Johnson v. Zenon*, 88 F.3d 828,

26   830 (9th Cir. 1996).  Ruiz mentioned the operative facts on which his claim is based in his

27   1997 Appellate Brief, but he based his claim entirely on state legal theory.  When the

28

1   petitioner fails to fairly present his claims, the exhaustion requirement has not been met.

2   *Roettgen*, 33 F.3d at 38.

3        In Ground 5, Ruiz claims that he was denied his right to a speedy trial by the trial

4   court's empaneling of a jury 25 days prior to taking any trial testimony.  Ruiz originally

5   raised this claim in his first Petition for Post-Conviction Relief, but the state court determined

6   that the claim was barred by Rule 32.2(3) of the Arizona Rules of Criminal Procedure,

7   because this claim could have been brought on direct appeal (Doc. 13, Exh O).  The Court

8   will not review a question of federal law decided by a state court if that state court's decision

9   rests on state law that is "independent" of the federal question and "adequate" to support the

10  judgment.  *Coleman*, 501 U.S. at 729-30.  The state court barred the speedy trial claim under

11  Rule 32.2(3) because the speedy trial claim could have been raised on direct review.  In

12  making its determination the state court did not address the merits of the federal speedy trial

13  claim.  Noting that the speedy trial claim was not raised on direct review was sufficient for

14  the state court to preclude the claim under Rule 32.2(3).  Thus, the state procedural default

15  ruling was "independent" of the federal question.  *See Ake v. Oklahoma*, 470 U.S. 68, 74-75

16  (1985); *Stewart v. Smith*, 536 U.S. 856 (2002).  Further, the state court expressly relied on

17  Rule 32.2(3) to bar Ruiz's speedy trial claim. A decision that the state court strictly follows

18  makes the procedural bar "adequate".  *See Johnson v. Mississippi*, 486 U.S. 578, 587 (1988)

19  (quoting *Hathorn v. Lovorn*, 457 U.S. 255, 262-63 (1982)).

20       Therefore, Ruiz defaulted his federal speedy trial claim in state court pursuant to an

21  independent and adequate state procedural rule.  The Court is precluded from reviewing that

22  claim unless Ruiz can demonstrate a miscarriage of justice or cause and actual prejudice to

23  excuse the default.  *See Coleman*, 501 U.S. at 750-51.  Ruiz has failed to show that the 25-

24  day delay caused him any real prejudice.  In determining whether a constitutional right to

25  speedy trial has been violated, courts will consider (1) the length of the delay, (2) the reason

26  for the delay, (3) defendant's assertion of his right to a speedy trial, and (4) the prejudice to

27  the defendant.  *Barker v. Wingo*, 407 U.S. 514, 530 (1972).  However, before a court will

28

1   even consider the above factors, there should be a delay which is presumptively prejudicial.

2   *Id.* Comparing the 25-day extension in this case with other delays found to be presumptively

3   prejudicial, this court concludes that such a delay is not presumptively prejudicial[2].

4       In Ground 6 of his habeas petition, Ruiz argues that appellate counsel afforded him

5   ineffective assistance when he failed to raise on appeal properly preserved pre-trial

6   constitutional issues affecting Ruiz's speedy trial, confrontation, and due process rights.

7   Ruiz raised this claim in both his second petition for post-conviction relief, and in his third

8   petition, contending that the second petition had been improperly dismissed. The state court

9   concluded that this claim was untimely, as it was raised in his second petition for post-

10   conviction relief, and was not a claim that constituted proof of actual innocence as required

11   for untimely claims under Rule 32.1(h) of the Arizona Rules of Criminal Procedure. The

12   state court cited Rule 32.2(b) in summarily dismissing the proceeding for post-conviction

13   relief. Therefore the claim is barred for the same reasons as Ground 5. The state court did

14   not address the merits of the claim in dismissing it as untimely, therefore the state procedural

15   default ruling was "independent" of the federal question. *See Ake v. Oklahoma*, 470 U.S. 68,

16   74-75 (1985); *Stewart v. Smith*, 536 U.S. 856 (2002). Further, the state court expressly relied

17   on the Arizona Rules of Criminal Procedure to bar Ruiz's speedy trial claim, making the

18   procedural bar "adequate". *See Johnson v. Mississippi*, 486 U.S. 578, 587 (1988) (quoting

19   *Hathorn v. Lovorn*, 457 U.S. 255, 262-63 (1982)). Ruiz can only overcome the independent

20   and adequate state ground doctrine if he can show cause for the default and prejudice or that

21   failure to consider the federal claim will result in a fundamental miscarriage of justice. *See*

22   *Coleman*, 501 U.S. at 750-51.

23       As evidence of cause for the default, Ruiz notes that counsel during his first post-

24   conviction petition was the same counsel he had on direct appeal, thus explaining why the

25

26       [2]In *Doggett v. United States*, 505 U.S. 647 (1992), the Supreme Court noted that

27   courts have generally found that delays approaching one year generally are presumptively prejudicial. *Id.* at 652 n.1.

28

1    claim was not raised during his first Rule 32 proceeding.   A claim for ineffective assistance

2    of counsel raised for the first time during a petitioner's second Rule 32 proceeding is not

3    regarded as waived and precluded when appellate counsel and counsel in the first Rule 32

4    proceeding are one and the same because appellate counsel is not expected to raise and argue

5    his or her own ineffectiveness. *See State v. Spreitz*, 39 P.3d 525, 526 (Ariz. 2002); *see also*

6    *State v. Bennett*, 146 P.3d 63, 67 (Ariz. 2006).   Although Ruiz can show cause for the

7    procedural default, he has failed to establish prejudice sufficient to overcome the independent

8    and adequate state ground doctrine, or that the failure to hear his ineffective assistance of

9    appellate counsel claim would result in a fundamental miscarriage of justice.

10        The United States Supreme Court has created a two part test which a defendant must

11   satisfy in order to prevail on an ineffective assistance of counsel claim.   In order to prevail

12   Ruiz would have to show (1) that counsel's performance on appeal fell below an objective

13   standard of reasonableness, and (2) that counsel's performance gives rise to a reasonable

14   probability that, if counsel acted properly, the result of the proceeding would have been

15   different. *Strickland v. Washington*, 466 U.S. 668 (1984).   Ruiz cannot satisfy either prong

16   set forth in *Strickland*.   Effective assistance does not require appellate counsel to bring every

17   possible issue on appeal.   Effective appellate advocacy requires that counsel focus on the

18   claims counsel feels are more likely to prevail.   Simply leaving out weaker arguments on

19   appeal is not evidence of incompetence. *Smith v. Murray*, 477 U.S. 527, 536 (1986) (citing

20   *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)); *accord Smith v. Robbins*, 528 U.S. 259, 288

21   (2000).

22        In this case, appellate counsel's advocacy on direct appeal resulted in the reduction

23   of a conviction for first-degree murder to second-degree murder and a remand for re-

24   sentencing.   During post-conviction relief proceedings, appellate counsel argued ineffective

25   assistance of trial counsel, resulting in an evidentiary hearing.   Appellate counsel contested

26   the competency of Bell, and questioned the exclusion of a statement made by an unavailable

27   witness under the correct legal standard.   Appellate counsel did fail to raise the speedy trial

28                                                         - 15 -

1   violation on direct appeal, which resulted in the claim being barred during the first Rule 32

2   proceeding. However, as discussed above, the speedy trial violation claim was without merit.

3   Appellate counsel does not act incompetently in deciding not to address a claim on direct

4   appeal which has little to no likelihood of obtaining appellate relief. *Smith*, 477 U.S. at 536.

5   Ruiz is unable to satisfy either prong under *Strickland*, and Ruiz has suffered no prejudice

6   on account of appellate counsel's performance. Therefore, Ruiz's ineffective assistance of

7   appellate counsel claim is procedurally barred on "independent" and "adequate" state

8   grounds, and is therefore precluded from federal habeas review.

9   **B.    Non-Cognizable Claims**

10      In Ground 7, Ruiz contends that Bell's mental condition, age, and lack of medication

11   rendered his testimony unreliable and made it impossible to effectively cross examine him.

12   Essentially, Ruiz is challenging Bell's competency. However, federal habeas relief cannot

13   be granted based on a state law evidentiary ruling. *See* 28 U.S.C. § 2254(a); *Estelle v.*

14   *McGuire*, 502 U.S. 62, 67-68 (1991); *see also Henry v. Kernan*, 197 F.3d 1021, 1031 (9th

15   Cir. 1999). Even if the state court erred in allowing the evidence, a misapplication of its own

16   evidentiary rules is insufficient to grant habeas relief. *McGuire*, 502 U.S. at 72. A federal

17   court will accept a state court's determination of state law. *Langford v. Day*, 110 F.3d 1380,

18   1388-89 (1996). Therefore, this claim fails.

19      In Ground 8, Ruiz contends that by refusing to admit the recorded statement of a

20   prospective unavailable witness, he was denied due process, a fair trial, and his right to

21   confrontation. This claim fails for the same reasons stated above concerning Ground 7.

22   Even if the state was erroneous in its application of the Arizona Rules of Evidence, such a

23   misapplication is insufficient to grant habeas relief, unless it is of constitutional magnitude.

24   *McGuire*, 502 U.S. at 67-68. Here, the evidentiary ruling did not render the trial so

25   fundamentally unfair so as to constitute a denial of federal constitutional rights. The

26   recorded statement adds nothing to Ruiz's case, and lacks any real probative value.

27   Therefore, this claim fails.

28

- 16 -

**C.     Merits-Based Analysis**

Grounds 2, 3, and 4 assert claims that will be analyzed on the merits.  The AEDPA limits the availability of habeas relief for a claim adjudicated on its merits to circumstances where the state court's disposition either:  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. § 2254(d).  A state court decision is "contrary to" clearly established federal law when the court has applied a rule of law that contradicts the governing law set forth in Supreme Court precedent, or it confronts a set of facts that are "materially indistinguishable" from a Supreme Court decision and yet reached a different result than the Supreme Court.  *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam).  Further, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Williams v. Taylor*, 529 U.S. 362, 402-13 (2000) (O'Connor, J., concurring and delivering the opinion of the Court with respect to AEDPA standard of review; *see also Bell v. Cone*, 535 U.S. 685, 694 (2002)).

In Ground 2, Ruiz contends that the trial court violated his due process rights by considering the emotional harm to the victim's family as an aggravating factor. Ruiz supports his argument as follows:  (1) capital case jurisprudence precludes the use of victim impact evidence to aggravate a sentence; (2) use of such evidence to aggravate a sentence for a murder conviction constitutes prohibited "double counting"; (3) the trial court's finding of emotional harm to the victim's family was not guided by any standard, and the sentence therefore failed to satisfy due process.

After a re-sentencing, Ruiz was convicted of second-degree murder.  The sentencing range for the crime of second-degree murder was prescribed by A.R.S. § 13-710(A) (1994).  At the time Ruiz committed the offense the presumptive term for second-degree murder was

sixteen years, which could be mitigated or aggravated by up to six years. Ruiz was sentenced to the presumptive sixteen year term, aggravated by two years by the trial court because of Ruiz's prior convictions and the emotional harm to the victim's family. Both aggravating factors were permitted by A.R.S. § 13-702(C)(9).

Relying on *Jones v. United States*, 526 U.S. 227 (1999), Ruiz argues that because the aggravating factors were not submitted to a jury and proven beyond a reasonable doubt, his due process and sixth amendment rights were violated. A later case, *Apprendi v. New Jersey*, 530 U.S. 466 (2000), held that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. The Arizona Court of Appeals considered both *Apprendi* and *Jones*, and was not persuaded by Ruiz's argument that any fact used to aggravate a sentence must be presented to a jury and proven beyond a reasonable doubt. The Arizona Court of Appeals concluded that because the factors used to aggravate Ruiz's sentence did not increase the penalty for second-degree murder beyond the statutory maximum permitted by A.R.S. § 13-710(A)[3], the trial court did not err by finding the existence of these factors by a standard other than proof beyond a reasonable doubt.

Respondents argue that the state court decision was neither contrary to, or involved an unreasonable application of clearly established federal law. For purposes of 28 U.S.C. § 2254(d) "clearly established federal law" is "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). Later Supreme Court decisions play no role in assessing the reasonableness of the state court decisions. *Brown v. Greiner*, 409 F.3d 523, 533 (2nd Cir. 2005).

---

[3]As prescribed by A.R.S. § 13-710(A), the presumptive term for second-degree murder was sixteen years, which could be mitigated or aggravated by up to *six years*. Ruiz's presumptive term was only aggravated by two years.

In order to determine the reasonableness of the state court's decision, the Court must decide how legal principles set forth by the Supreme Court defined "the statutory maximum sentence" for any crime at the time the state court made its decision.  As noted earlier, *Apprendi* held that for a court to use a "fact" to aggravate a sentence "beyond the statutory maximum", the court must have that fact presented to a jury and proven beyond a reasonable doubt.

*Blakely v. Washington*, 542 U.S. 296 (2004), was decided in June 2004 and clarified the meaning of statutory maximum for *Apprendi* purposes:

> The 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*.  In other words, the relevant 'statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings.  When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment,' and the judge exceeds his proper authority.

*Id.* at 303-04 (emphasis in original) (citations omitted).

However, *Blakely* was not decided until after the state court issued its decision in 2001. Therefore, the governing legal principles that existed during the state court's decision were those laid out in *Apprendi*.  Respondents argue and this Court agrees, that the state court's interpretation of *Apprendi* was reasonable.  Prior to the issuance of *Blakely*, many of the appellate courts, including the Ninth Circuit, were of the opinion that *Apprendi* did not apply unless the state court was aggravating the defendant's sentence beyond the statutory maximum permitted by the statute of conviction.  *See United States v. Ellis*, 241 F.3d 1096, 1103-04 (9th Cir. 2001) (*Apprendi* not implicated because defendant's sentence was less than maximum statutory sentence).  The rule in *Blakely* was a new rule that was not apparent to all reasonable jurists, nor ascertainable by established precedent at the time the state court in this case made its decision.  *See Schardt v. Payne*, 414 F.3d 1025, 1035 (9th Cir. 2005) (noting that the rule announced in *Blakely* was clearly not apparent to all reasonable jurists, nor was it dictated by precedent).

This Court agrees with Respondents that the state court's interpretation of *Apprendi* was reasonable, and therefore its application of the *Apprendi* legal standard was reasonable. Further, as pointed out by Respondents, the state court aggravated Ruiz's sentence based both on the emotional harm suffered by the victim's family as well as Ruiz's prior conviction in aggravating his sentence. *Apprendi* explicitly held that prior convictions can be used to impose a sentence above the presumptive sentence. *Apprendi*, 530 U.S. at 490. Thus, notwithstanding the reasonableness of the state court's application of *Apprendi*, Ruiz would not be entitled to habeas relief because once the state court found the fact of a prior conviction, it was entitled to aggravate the sentence above the statutory maximum. Therefore, this Court concludes that Ruiz is not entitled to habeas relief for this ground.

In Ground 3, Ruiz contends that he was coerced into not testifying by his trial counsel, consequently denying him his constitutional right to choose whether or not to testify at trial. Ruiz contends that he was unaware of his right to testify, because counsel informed him that he would not be putting Ruiz on the stand and that it was counsel's decision alone. Ruiz raised this claim in post-conviction relief proceedings, resulting in an evidentiary hearing where both Ruiz and appointed counsel testified and submitted supplemental briefs. The state court found that Ruiz failed to prove his claim of coercion. Ruiz's petition for review was summarily denied by the court of appeals.

Every criminal defendant has the constitutional right to take the witness stand and testify on his or her own behalf, if he or she decides it is in their best interest. *Rock v. Arkansas*, 483 U.S. 44, 47 (1987). This right is personal to the defendant alone, and cannot be waived by anyone but the defendant, and an attorney must seek the client's consent to waive the right. *Jones v. Barnes*, 463 U.S. 745, 751 (1983) (citing *Wainwright v. Sykes*, 433 U.S. 72, 93 (1977) (Burger, C.J., concurring)). Although the ultimate decision whether to testify rests with the defendant, he is presumed to assent to his attorney's tactical decision not to have him testify, and waiver can be presumed when the defendant fails to take the stand and/or fails to inform the court of his desire to do so. *United States v. Joelson*, 7 F.3d

174, 177 (9th Cir. 1993).  However, any waiver of the defendant's right to testify must be made knowingly and intentionally.  *Id.*

At the evidentiary hearing Ruiz argued that he was unaware of his right to testify at trial.  He stated that appointed counsel had met with him on numerous occasions, but during those meetings counsel did not review any constitutional rights with him and only asked if he was willing to testify, to which Ruiz answered affirmatively.  Respondents argue that the evidence supports the conclusion that Ruiz was aware of his right to testify, and that his silence throughout the trial evidenced his consent not to testify, based on counsel's tactical trial strategy.  The Court agrees with Respondents.

Evidence was elicited during the evidentiary hearing supporting the notion that Ruiz had knowledge of his right to testify.  Ruiz had previously been tried for felony offenses.  Although he never took the stand during his previous arrests and subsequent legal proceedings he had been made aware of his constitutional rights.  Further, Ruiz testified at the evidentiary hearing that counsel asked Ruiz if he was willing to testify.  This is not affirmative evidence of Ruiz's knowledge of his right, however, it is evidence that the topic was discussed.  Based on an examination of the record it is fair to assume that Ruiz had knowledge of his right to testify prior to trial.

Further, there is little or no evidence indicating that Ruiz intended or even desired to take the witness stand during trial in opposition to his appointed counsel's strategic decision not to have Ruiz testify.  Rather, the record establishes his acquiescence to appointed counsel's strategy. A court may infer, based on the defendant's conduct, that the right to testify has been waived.  *United States v. Edwards*, 897 F.2d 445, 446 (9th Cir. 1990).  This waiver is presumed when the defendant fails to testify or notify the court of his desire to do so.  *Joelson*, 7 F.3d at 177.  A defendant is presumed to have waived his right to testify when he "remains 'silent in the face of his attorney's decision not to call him as a witness.'"  *United States v. Pino-Noriega*, 189 F.3d 1089 (9th Cir. 1999), *quoting United States v. Nohara*, 3 F.3d 1239, 1244 (9th Cir. 1993).

1    The record establishes that counsel strongly recommended to Ruiz that he not take the

2 stand.  Counsel made a tactical decision based on the fact that Ruiz had prior convictions and

3 had shaven his head the night of the stabbing, information that counsel did not want to try

4 and explain to the jury.  There is no evidence that Ruiz objected to appointed counsel's

5 strategy, or that he notified the trial court of any desire to testify.  Ruiz and the trial judge

6 communicated regarding jury instructions, yet Ruiz failed to mention at that time that he

7 wished to testify.  Further, if Ruiz sought to object to counsel's decision, he could have

8 spoken up when counsel informed the trial court that his client would not be testifying.  By

9 remaining silent until after the verdict had been entered, Ruiz waived his right to testify.  *See*

10 *Pino-Noriega*, at 1095 (citing *United States v. Edwards*,  897 F.2d 445, 446 (9th Cir. 1990)).

11 Ruiz's conduct indicates a waiver of his right to testify and his acquiescence to counsel's trial

12 strategy.

13    Based on the affirmative evidence of Ruiz's acquiescence to counsel's trial strategy

14 and his presumed waiver of his right to testify, the state court's decision on this issue did not

15 involve an unreasonable application of clearly established Supreme Court precedent.  Ruiz

16 had knowledge of his right to testify.  Further, Ruiz waived his right to testify and acquiesced

17 to appointed counsel's trial strategy.  Therefore, the Court concludes that habeas relief should

18 be denied on this ground.

19    In Ground 4, Ruiz contends that appointed counsel rendered ineffective assistance by

20 successfully dissuading him from testifying at trial. In order to prevail on a claim of

21 ineffective assistance of counsel, Ruiz is required to establish not only that counsel's

22 performance was deficient, but that this performance prejudiced him.   *Strickland v.*

23 *Washington*, 466 U.S. 668 (1984).  There is a strong presumption that counsel rendered

24 adequate assistance.  *Id.* at 690.  An assessment of counsel's conduct is done from counsel's

25 perspective at the time.  *Bonin v. Calderon*, 59 F.3d 815, 833 (9th Cir. 1995).  Even if Ruiz

26 could establish deficient performance, he must further demonstrate a "reasonable probability

27

28                                                    - 22 -

1   that, but for counsel's unprofessional errors, the result of the proceedings would have been
2   different." *Strickland*, 466 U.S. at 694.

3        A court may go straight to the prejudice requirement of an ineffective assistance of
4   counsel claim, but cannot presume prejudice solely from counsel's allegedly deficient
5   performance. *Jackson v. Calderon*, 211 F.3d 1148, 1155 (9th Cir. 2000) (citing *Strickland*,
6   466 U.S. at 697). Rather, *Strickland* requires a showing of a " reasonable probability that,
7   but for counsel's unprofessional errors, the result of the proceeding would have been
8   different." *Strickland*, 466 U.S. at 691. For the reasons stated below, the Court concludes
9   that Ruiz has failed to meet either burden and the claim of ineffective assistance has no merit.

10       As mentioned, Ruiz argues that trial counsel was ineffective by dissuading him from
11  testifying at trial. Actions by counsel that "might be considered sound trial strategy" do not
12  constitute ineffective assistance. *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*,
13  350 U.S. 91, 101 (1955)). In this case, counsel's decision was sound trial strategy, given the
14  weakness of the evidence against Ruiz, and the challenge that Ruiz would face during cross
15  examination in explaining the statements he made to investigators that he shaved his head
16  and moustache hours after the altercation with the victim in order to avoid detection for
17  parking tickets. Counsel's recommendation to Ruiz that he not take the stand was sound trial
18  strategy, and far from deficient performance.

19       Ruiz further contends that he was prejudiced by counsel's actions, as evidenced by
20  the modification of his first-degree murder conviction to second-degree murder. Setting
21  aside the reasonableness of counsel's actions, in order to prevail Ruiz must show that there
22  is a reasonable probability that if Ruiz had taken the stand, the outcome of the trial would
23  have been different. *Strickland*, 466 U.S. at 694. Respondents argue that in order to prevail
24  Ruiz would have to prove a reasonable probability that he would have been found not guilty,
25  not that he would have been found guilty of a lesser crime. This Court concludes that Ruiz
26  has failed to prove that his testimony would have had any impact on the outcome of the case.

27

28

1    Ruiz stated at the evidentiary hearing that had he taken the stand during trial, his

2    testimony would have been "materially consistent" with the statements he gave to police.

3    Reviewing those statements, Ruiz would have testified that he was innocent, was being

4    framed because of racial prejudice in the neighborhood, and that he saw the victim leave with

5    an individual named Blossom, and return later to the victim's home.  In addition, Ruiz's

6    testimony would have been riddled with inconsistencies, and many of his claims would have

7    been impeached or contradicted by other witnesses' testimony.  Ruiz's testimony would have

8    had no bearing on the jury's finding of "premeditation", which led to the original conviction

9    for first-degree murder.  Although the court of appeals reversed his conviction and remanded

10   for re-sentencing for second-degree murder, Ruiz has provided no evidence from which one

11   could reasonably conclude that had he testified he would have either been acquitted, or

12   convicted of anything other than first-degree murder.   Counsel presented Ruiz's

13   misidentification defense through his cross-examination of the state's witnesses and the

14   outcome of the trial would have been no different had Ruiz testified.  Therefore this Court

15   concludes that Ruiz's ineffective assistance of counsel claim is without merit.

16       **IT IS THEREFORE RECOMMENDED** that Robert Anthony Ruiz's petition for

17   writ of habeas corpus be **denied and dismissed with prejudice** (Doc. 1).

18       **IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave

19   to proceed *in forma pauperis* on appeal be **denied** because as to certain grounds, dismissal

20   of the Petition is justified by a plain procedural bar and jurists of reason would not find the

21   ruling debatable, and as to other grounds, Ruiz has not made a substantial showing of the

22   denial of a constitutional right.

23       This recommendation is not an order that is immediately appealable to the Ninth

24   Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of

25   Appellate Procedure, should not be filed until entry of the district court's judgment.  The

26   parties shall have fourteen days from the date of service of a copy of this recommendation

27   within which to file specific written objections with the Court.  *See*, 28 U.S.C. § 636(b)(1);

28

Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure.  Thereafter, the parties have fourteen days within which to file a response to the objections.  Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).  Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.  *See* Rule 72, Federal Rules of Civil Procedure.

DATED this 15th day of April, 2011.

_____
David K. Duncan
United States Magistrate Judge